(No. 3815— ▬▬▬▬▬▬▬▬

MARIE GIELOW, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed May 8, 1945.*

J. W. HORWITZ AND A. B. LITOW, for claimant.

GEORGE F. BARRETT, Attorney General; WILLIAM L. MORGAN, Assistant Attorney General, for respondent.

CHIEF JUSTICE DAMRON delivered the opinion of the court:

This complaint was filed October 29, 1943, for benefits under the Workmen's Compensation Act.

The complaint alleges that Marie Gielow was employed by the respondent at the Elgin State Hospital as an attendant and on the 9th day of December, 1942, she was injured by reason of an accident arising out of and in the course of her employment by the State of Illinois; that the respondent paid her for her services, as such attendant, the sum of $52.00 per month plus room and board; that on the last-mentioned date, she was attacked by an insane patient who knocked her to the floor in said institution, causing her to fall, injuring her right elbow, which has caused her to suffer the loss of use of her right arm.

The record consists of the complaint, departmental report, transcript of evidence and abstract of same, statement, brief and argument of claimant, and brief and argument of the respondent.

The evidence in this case was taken on March 19, 1945. At the time of the taking of the evidence, a stipulation was entered into by and between the parties hereto; that the claimant and respondent were operating under the Workmen's Compensation Act and that the relationship of employer and employee was existing be-

tween the claimant and respondent at the time of the injury; that said injury arose out of and in the course of her employment, and that notice of said injury was served upon the employer and claim for compensation was made within the time stipulated by the Act; that the annual wage of claimant was $642.60 plus room and board; that the age of the claimant at the time of the accident was 46 years, and that she had no children under the age of 16 years dependent upon her; that medical care and hospitalization was furnished; that no compensation was paid to claimant while she was in the hospital; that the questions to be decided by this Court are, first, the nature and extent of the injury, if any, and the claim for medical and temporary total compensation due, if any.

The claimant testified that the last treatment she received by the respondent was in May, 1943, because she did not have the money to go back and forth to the Research Hospital for treatment, and at that time, her arm felt very stiff; that she could not work it the way she wanted to and the loss of functional use in the arm was a great handicap to her in many ways; that she could not make a real fist and that she could not do many things that she had been in the habit of doing prior to the injury; that her knuckles were stiff and she was unable to bend her arm in some directions; that her fingers were stiff and she had a numbness over her knuckles. Prior to the injury, the arm was in perfect condition; that now the only work she is able to perform is dish washing; that she found employment on the 8th day of June, 1943, and until the last-mentioned date, she was unemployed due to the condition of her right arm.

Dr. S. I. Weiner was called to testify on behalf of the claimant. He testified he was graduated from the

University of Illinois College of Medicine, having gradu-
ated in 1924; that he examined claimant on the 29th day
of January, 1945, and found objectively that claimant's
right arm revealed about 15 degrees lacking in extension
of the elbow, 45 degrees lacking in supination of the
elbow. At the wrist, there were 30 degrees lacking in
dorsal flexion, and 30 degrees in palmer flexion. At the
hand, the knuckles were 20 degrees lacking in flexion at
each of the knuckle joints of the forefingers. A fist could
not be made; that the examination further revealed a dis-
turbance of sensation known as a hypoalgesia. This
disturbance was confined to the base of the ulnar and
medial nerve of the hand. Measurements of the right
arm were taken, resulting in the following: There was
an atrophy, or shrinkage, in the right arm so that cir-
cumference around the biceps, the muscle, was 12″ in
comparison with 12⅜″ on the left side. He testified that
on a right-handed person, the circumference of the biceps
should be larger by variable amounts, ranging from one-
half to a quarter of an inch. The measurement of the
right forearm was 10¼″ in comparison with 10⅜″ in
the left forearm. In this instance also, in a right-handed
individual, the circumference in the right forearm should
be from one-half to a quarter of an inch larger than the
left. In this instance, it was smaller. At the middle
joints of the fingers, there was a deformity in flexion of
15 degrees so that the fingers could not be straightened.
He further testified that he then took x-rays of the right
elbow, including one-half the arm and forearm. The
lateral view showed fracture of the anterior part of the
ulna extending into the joint of the elbow. This fracture
line is about 2″ in length and shows an outward displace-
ment of the articular part of the distal fragment. Union
has not been complete. In the center of the fracture

where the opposing surfaces of the fracture are, there is a destruction of bone for a distance of about 1" in length and about ⅜" in width. There is a marked narrowing of the elbow joint on the ulna side to about one-third the width that it is found on the radial side. There is also a periostial traumatic roughening of the superior margin of the olocranon process of the ulna. From the neck of the radius near the elbow, there is a sharp-pointed, bony spur, which shows that there has been some trauma to the head of the radius. At the joint between the ulna and the radius at the elbow, there is a separation, distortion and a roughening.

Dr. Alan E. Lieberman was called on behalf of the respondent. He testified that he was a graduate of the University of Chicago and Rush Medical College; that he saw the claimant the day following the injury; that it was his opinion that she had suffered an extremely complex fracture of the right arm and one that warranted expert opinion and treatment; that he immediately made arrangements to have her taken to the Illinois Research Hospital where she could be treated and attended by orthopedic surgeons; that she was hospitalized in the Illinois Research Hospital; that her arm and elbow were encased in a huge body cast. She was later returned to the Elgin State Hospital, where she completed her convalescence. He testified, after making an examination the day his testimony was given, that she now has a chronic residual defect in muscle and joint function, especially involving the wrist and fingers of the right hand; that the disability is a rather severe one and will probably seriously limit her ability to do very much with her right hand; that she would not be able to do the things that require fine movements of the right hand, and

because of her condition, she would not be able to pass a physical examination to be re-employed as an attendant.

From a careful consideration of the entire record and a personal observation of the claimant by the Court, we make the following findings:

That the earnings of the claimant, or her predecessor, during the year preceding the accident was $918.00 per annum, and that her average weekly wage was $17.65, making her compensation rate $9.70; that the claimant at the time of the injury was 46 years of age, unmarried, and had no children under 16 years of age dependent upon her for support; that all necessary first aid, medical, and surgical services were provided, or offered, by the respondent; that claimant was temporarily totally disabled from the date of her injury as aforesaid until June 3, 1943, to-wit, for a period of 25 weeks; that she also suffered the permanent loss of 75% of the use of her right arm.

We further find that claimant is entitled to have and receive from the respondent the sum of $9.70 per week for 25 weeks for temporary total disability in accordance with provisions of Section 8, Paragraph (b) of the Workmen's Compensation Act, amounting to the sum of $242.50 and the further sum of $9.70 per week for a period of 168¾ weeks, amounting to the sum of $1,636.88, for the permanent loss of 75% of the use of the right arm in accordance with the provisions of Paragraph (e) of Section 8, of the Act.

An award is therefore entered in favor of claimant in the sum of $1,879.38. From this amount, there must be deducted the sum of $76.21 heretofore paid to claimant by respondent for non-productive work from December 9, 1942, to January 14, 1943, leaving a balance due claimant of $1,803.17, payable to claimant at $9.70 per

week. Of this amount, the sum of $1,222.20 accrued to May 10, 1945, and is payable in a lump sum forthwith. The remainder of said award amounting to $580.97, to be paid to claimant in weekly installments of $9.70 for 59 weeks and one week at $8.67.

This award is subject to the approval of the Governor as provided in Section 3 of ''An Act concerning the payment of compensation awards to State employees.''